496 N.E.2d 1321 (1986)
AETNA INSURANCE COMPANY OF THE MIDWEST, Appellant (Plaintiff and Third-Party Defendant below),
v.
John RODRIGUEZ; John Rodriguez, d/b/a Atlas Transmission; John Rodriguez, d/b/a Custom Automotive; Shaver Motors, Inc., and Associated Adjusters, Appellees (Defendants below). Appeal of Shaver Motors, Inc., Appellee (Third-Party Plaintiff below).
No. 3-1085A277.
Court of Appeals of Indiana, Third District.
August 28, 1986.
*1322 Charles T. Jennings, Donna H. Fisher, Jennings, Maas & Stickney, Indianapolis, for appellant.
Clyde D. Comptom, Bonnie C. Coleman, Hodges, Davis, Gruenberg, Compton & Sayers, P.C., Merrillville, for appellee Shaver Motors, Inc.
Edward A. Chapleau, South Bend, for appellee Associated Adjusters, Inc.
Nicholas J. Anast, Tokarski & Anast, Schererville, John Kappos, Merrillville, for appellee John Rodriguez.
GARRARD, Judge.
In 1979, John Rodriguez (Rodriguez) bought a building from Shaver Motors, Inc. (Shaver). Shaver took a mortgage on the property. Rodriguez was required to keep the premises insured for Shaver's benefit. Rodriguez contacted Nick George (George) to procure insurance. In the due course of time, Aetna Insurance Company of the Midwest (Aetna), issued a policy to Rodriguez. The policy contained a standard mortgage clause which, by its terms, would protect any mortgagee named in the declarations. Shaver was not named in the declarations, but was listed on the endorsements page as a contract seller rather than a mortgagee. After the building burned, Shaver attempted to collect under the standard mortgage clause. Aetna did not cooperate, and litigation followed. Both sides moved for summary judgment. The trial court granted Shaver's motion, stating:
"We have a prospective insured, Rodriguez, without a high school education (although he has made more money than most Judges will ever see) buying a product in a highly technical field. He knows he wants fire insurance to protect his property and knows that he must have insurance to protect the former owner of the property to whom he still owes money. He contacts an insurance broker-agent who under the specific facts of this case, is the agent of the company and not that of the prospective insured.
The only facts in the record show that the prospective insured, Rodriguez, tells the broker-agent that he is buying this property from Shaver Chevy and making payments; that he wants insurance and wants Shaver Chevy protected on it.
The prospective insured does not know the difference between contracts and mortgages, much less the legal differences between the defenses of an insurance company as to contract sellers, loss payees, and mortgagees. I proffer the thought that, although others may know the distinction between the actual terms, only insurance attorneys and underwriters know the distinction as to company defenses which may be invoked against each of the above three classes of insureds, and I further suggest that many agents do not understand same or know there is a difference between the defenses.
No one asked the proposed insured: `Are you buying this real estate on a long term conditional sale contract or did you get a deed then in return sign a promissory note and a real estate mortgage?' Neither did anyone check the Recorder's Office to determine any correct facts. No one even checked the correct names of the parties, but simply used the street vernacular.
The broker-agent and company were faced with a situation in which the words used by the prospective insured, Rodriguez, were susceptible to two or more meanings or interpretations. They did nothing to determine the correct interpretation or facts, but simply adopted the interpretation and wrote the insurance policy in the manner most legally advantageous to the company. When a company is faced with facts susceptible of many interpretations, said company is then under a duty to determine the correct *1323 interpretations and not simply adopt the one most advantageous to themselve[s] to the detriment of all others.
This is not a situation in which the proposed insured committed an intentional fraud by withholding information. He specifically made it known that someone else had an interest in this property and that he wanted them protected. He did not withhold any requested information, nor deliberately mislead the company. Neither is this a situation where the company is entitled to rely upon the application for insurance. There is no evidence there was ever any appli[c]ation.
Neither is this a case where Shaver was not a mortgagee, but was listed as one and after a loss, it tried to claim the proceeds as a mortgagee. Shaver was an actual mortgagee and had recorded their mortgage which is notice to any dealing with this property.
Under the particular facts of this case, Aetna is estopped to deny coverage to Shaver as a mortgagee.
Shaver should collect the amount of the principal secured by their mortgage together with pre-judgment interest at the same rate as the promissory note of Rodriguez to Shaver.
Shaver has asked for punitive damages. Shaver, prior to the loss, had a receipt showing that Rodriguez had purchased insurance. Shaver did not contact Aetna and object to their listing as a `contract seller.' Thus, there is a legitimate controversy for trial and in as much as Shaver could also have prevented the conflict, it is now estopped to claim punitive damages.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that Shaver Motors, Inc., should recover of and from Aetna Insurance Company of the Midwest the total sum of One Hundred One Thousand, Eight Hundred Sixty-five Dollars and Thirty-five Cents ($101,865.35), being $92,765.98 principal, $4,185.07 as interest from 11/18/84 to 4/1/85, and $4,4914.30 (sic) as Interest from 4/1/85 to 10/1/85."
Transcript at 644.
Aetna appeals. We note that this case presents a certain procedural novelty in that while the trial court stated that Aetna was estopped to deny coverage, the parties, especially Shaver, spend much of their briefs discussing coverage on the contract. Since the issue was fully briefed, we shall determine both law questions of whether the insurance contract covered Shaver and whether Aetna was estopped from denying Shaver coverage on the contract. We reverse.
As should be obvious, since this case comes to us from the granting of a motion for summary judgment, we must determine whether the pleadings and affidavits, taken in the light most favorable to the non-moving party, show that there is no genuine issue of material fact. The mere fact that both parties requested summary judgment does not alter this standard. Instead, each motion must be considered separately. Ebert v. Grain Dealers Mut. Ins. Co. (1973), 158 Ind. App. 379, 303 N.E.2d 693.
A written contract of insurance is governed by the normal rules of contract law. It is the court's duty to enforce the intentions of the parties, as they have manifested them in the writing. Evans v. National Life Accident Insurance Co. (1984), Ind. App., 467 N.E.2d 1216.
Here, the contract plainly stated:
"MORTGAGEE AND TRUSTEE INTEREST
If there is loss to any real property covered under YOUR PROPERTY COVERAGE, we will pay any mortgagee or trustee named in the Declarations up to his, her or its interest in that property. This provision will apply to all present or future mortgages in the order of precedence of these mortgages.
Regarding the interest of any mortgagee or trustee designated in the Declarations, this insurance will not be invalidated by any of the following:

*1324 * any act or neglect by any mortgagor or owner of the property;
* foreclosure or other proceedings, or notice of sale relating to the property;
* change in the title or ownership of the property; or
* occupation of the premises for purposes more hazardous than existed when this insurance took effect."
Record at 50.
Shaver claims that it was listed, but labeled as a contract seller rather than as the mortgagee it was. Since the Supreme Court has greatly reduced the distinction between contract seller and mortgagee, see Skendzel v. Marshall (1973), 261 Ind. 226, 301 N.E.2d 641, Shaver claims that it is covered even if it was mislabeled. While we do not disagree, we need not reach this question. Shaver was not listed as either contract seller or mortgagee in the declarations, so we cannot say that coverage was provided as a matter of law.
Shaver contends that the standard mortgage clause protects it from any act by the mortgagor. Thus, it claims to be protected from Rodriguez's failure to name it.
It seems obvious that in order to claim the benefit of the contract, the contract must have been formed. Since we cannot say that Shaver was covered as a matter of law, the argument must fail.
We also believe that there is a genuine issue of material fact concerning estoppel, since we agree with Aetna that there is a genuine issue of material fact as to whose fault it was that Shaver was not properly listed.
The trial court apparently believed that since Nick George was a "broker-agent," his acts and knowledge should be attributed to Aetna.
The evidence in the record, viewed in the light most favorable to the nonmoving party, indicates that George was an insurance broker, since he placed insurance through more than one company. See Record at 447-8.
Aetna argues that in Indiana, an insurance broker is always the insured's agent, and thus George's acts should not be attributed to them. See, e.g., Stockberger v. Meridian Mutual Insurance Co. (1979), 182 Ind. App. 566, 395 N.E.2d 1272; Automobile Underwriters, Inc. v. Hitch (1976), 169 Ind. App. 453, 349 N.E.2d 271.
At one time, we would have agreed since at the time the insurance involved in those cases was procured, IC (1971) XX-X-XX-X(d) stated that:
"[A]n insurance broker is hereby declared to be the agent of the insured for all purposes in connection with such insurance."
However, in 1977 the General Assembly repealed IC 27-1-15 and replaced it with IC 27-1-15.5. Our research does not indicate that the provision concerning brokers' authority was retained in the recodification. Thus, it would appear that the Indiana common law has been restored to the state it was in before the statute was enacted.
Before the statute took effect, Indiana cases held that when a broker made application for insurance, and the insurance policy was issued, the broker was the agent of the insurer and could bind it within the scope of his authority. Indiana Insurance Co. v. Hartwell (1889), 123 Ind. 177, 24 N.E. 100; Johnson, Ins. Com'r. v. Schrepferman (1918), 67 Ind. App. 606, 119 N.E. 494, 16 Appleman, Insurance Law and Practice, Sec. 8731 at 375 (1981). In reviewing the record, we have not found any evidence concerning George's authority. Thus, there is a genuine issue concerning it and summary judgment was inappropriate.
Further, from the standpoint of a summary judgment, it is unclear what Rodriguez told George. In his sworn statement, Rodriguez could not recall how he explained Shaver's interest to George. He also stated that he told George that he wanted Shaver covered. In his proof of loss, he referred to them as contract sellers. The policy endorsements identify Shaver as a contract seller.
The trial court concluded that Rodriguez did not tell George that he was buying on contract, but only told them that he was *1325 buying the property from Shaver and wanted them covered. We disagree. Liberally construing the record and all reasonable inferences in favor of the nonmoving party, there is an issue as to what Rodriguez told George. Rodriguez is uncertain as to what he said. The proof of loss and the contract endorsements list Shaver as a contract seller. Shaver is not named in any capacity in the declarations. Upon hearing all the evidence the fact finder could conceivably determine that there is liability or that Shaver must be left to its remedy against Rodriguez.
The trial court suggests that Aetna was on notice of Shaver's interest in the property and thus estopped from denying coverage since Shaver's mortgage was recorded. An insurance company does not usually have a duty to investigate the facts presented to it in an application. See, e.g., Apolskis v. Concord Life Insurance Co. (7th Cir.1971), 445 F.2d 31, 36. A recording statute is intended to put those dealing with the property on notice as to the interest recorded. Lincoln Nat. Bank v. Nathan (1939), 215 Ind. 178, 19 N.E.2d 243. Aetna was not dealing in the property since it neither gained nor lost an interest in it. Thus, the recording statute did not impose a higher duty of investigation on it.
Finally, apparently as an alternative ground for the trial court's decision, Shaver contends that the affidavit made by one of Aetna's employees established Aetna's duty to investigate and properly determine Shaver's status. Shaver apparently concludes that since Aetna did not investigate, Aetna should be estopped from denying coverage. We disagree. The employee stated that an underwriter "... would examine the status of all other interested parties... ." From this one could infer that all that would be examined would be the application. It does not establish a duty to investigate.
In its conclusion, Aetna requests that we reverse the summary judgment entered by the trial court and enter summary judgment in its favor.
This we cannot do. In order to succeed in its cross motion, Aetna would have to establish that there was no genuine issue of material fact as to its non-liability. Since Shaver was not listed in the declarations of the insurance policy, it might have succeeded if the only issue was liability on the contract. In this case, the issue of estoppel has also been raised. As we stated above, there is a genuine issue as to whether Rodriguez identified Shaver as a contract seller. We also believe that a reasonable man might conclude as the trial court did that Rodriguez was unclear as to Shaver's status, see record at 571, and that Nick George improperly identified him.
Given that no evidence was presented concerning Nick George's authority, we cannot conclude that there is no genuine issue as to whether Aetna might be bound by his actions. Summary judgment in Aetna's favor would be inappropriate.
For the reasons discussed, the trial court's decision to grant Shaver's motion for summary judgment is reversed, and this case is remanded to it for further proceedings.
Reversed.
STATON, P.J., and HOFFMAN, J., concur.