**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANTS:

**ROBERT W. JOHNSON**
Johnson Jensen LLP
Indianapolis, Indiana

**SAMUEL L. JACOBS**
**KIMBERLY H. DANFORTH**
Jacobs Law LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**MARK D. GERTH**
**JOHN B. DRUMMY**
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ALYSE McGLAUGHLIN and CONNIE KLEINER,<br>    Appellants-Plaintiffs,<br><br>        vs.<br><br>JENNIFER M. McGLAUGHLIN, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and ROGER McGLAUGHLIN,<br>    Appellees-Defendants. | )<br>)<br>)<br>)<br>)  No. 49A02-1208-PL-677<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
Cause No. 49C01-1003-PL-12114

**March 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Alyse McGlaughlin and her mother, Connie Kleiner (individually, "Alyse" and "Connie"; collectively, "Appellants") appeal the trial court's denial of a motion to correct error following its grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm"). The trial court reasoned that State Farm was entitled to complete set-off of any payment it would have owed to Appellants under the uninsured motorist ("UM") endorsement they had purchased from State Farm, because Alyse settled with a third party's insurer for an amount equal to the UM endorsement's policy limits. Having so concluded, the trial court entered summary judgment in favor of State Farm. Appellants moved to correct error, which the trial court denied. Appellants contend the trial court erred.

We affirm.

**Facts and Procedural History**

On March 30, 2008, Alyse was a passenger in a vehicle driven by her sister-in-law, Jennifer McGlaughlin ("Jennifer"). Jennifer's vehicle was involved in a collision with a car driven by Benjamin Rouse ("Rouse"), and Alyse was injured during the crash. Rouse had automobile insurance coverage through American Family Insurance Company ("American Family"); that policy afforded $100,000 limits for injuries resulting from an automobile accident.

Jennifer's vehicle was not insured. However, Alyse was an insured under Connie's automobile insurance policy, which was issued by State Farm. The State Farm policy carried

2

a UM endorsement with a policy limit of $100,000.

Alyse filed a claim with American Family against Rouse's policy. Alyse settled with Rouse and American Family for American Family's $100,000 policy limit. Alyse and Connie also filed a claim with State Farm, seeking payment under the provisions of the UM endorsement. State Farm denied the claim.

On March 17, 2010, Appellants filed suit against Jennifer, State Farm, and Roger McGlaughlin. On June 28, 2011, State Farm filed a motion for summary judgment, in which it argued that it was entitled to set off its liability under the UM endorsement in an amount equivalent to what American Family had already paid Alyse, thus eliminating its liability to the Appellants for their damages.

On January 17, 2012, the trial court conducted a hearing on State Farm's motion for summary judgment. On February 6, 2012, the trial court granted State Farm's motion; the following day, the trial court issued an order setting forth its reasoning and distinguishing the State Farm policy from that interpreted in Masten v. AMCO Ins. Co., 953 N.E.2d 566 (Ind. Ct. App. 2011), trans. denied, which Appellants had contended was dispositive of the basis for State Farm's motion for summary judgment.

On March 6, 2012, Appellants filed a motion to correct error. A hearing was conducted on May 22, 2012, and on July 24, 2012, the trial court denied Appellants' motion.

This appeal ensued.

**Discussion and Decision**

3

Standard of Review

Appellants contend that the trial court erred when it denied their motion to correct error. We review a trial court's decision on a motion to correct error for an abuse of discretion. City of Indianapolis v. Hicks, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), trans. denied. Where, as here, the question presented on appeal is purely a question of law, we review the trial court's decision de novo. Id.

Underlying the motion to correct error is the trial court's order granting State Farm's motion for summary judgment. Our standard of review in such cases is well-settled. We review a grant of summary judgment under the same standard as that of the trial court. Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269 (Ind. 2009). We consider only the materials the parties designated to the trial court, and must determine from those materials whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Dreaded, 904 N.E.2d at 1269-70. We resolve all factual inferences and resolve all doubts as to the existence of a question of material fact in favor of the non-movant. Dreaded, 904 N.E.2d at 1270. The movant bears the burden of establishing a prima facie case that it is entitled to summary judgment; only after this does the burden shift to the non-movant to establish that summary judgment is inappropriate. Id.

An order granting summary judgment is clothed with a presumption of validity. Gagan v. Yast, 966 N.E.2d 177, 184 (Ind. Ct. App. 2012), trans. denied. We may affirm the entry of summary judgment on any theory supported by the materials designated to the trial

court. Trustcorp Mortg. Co. v. Metro Mortg. Co., 867 N.E.2d 203, 213 (Ind. Ct. App. 2007). However, we are mindful that we must carefully review the trial court's decision to ensure the non-movant was not improperly denied his day in court. Id. at 212. "Questions as to the interpretation of an insurance policy are particularly well-suited for summary judgment, as these are primarily issues of law for the court." Argonaut Ins. Co. v. Jones, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011), trans. denied. We review de novo the construction of the terms of an agreement. Walker v. Emp'rs Ins. of Wausau, 846 N.E.2d 1098, 1104 (Ind. Ct. App. 2006).

Analysis of the Set-Off Provision in the State Farm Policy

The Appellants contend that the trial court erred in holding that the UM provision in the State Farm policy was unambiguous and permitted State Farm to set off its liability under the insurance policy in proportion to sums paid to the Appellants by other parties.

Our legislature has set forth the statutory scheme that governs UM and underinsured motorist ("UIM") insurance endorsements in Indiana. See Ind. Code § 27-7-5-1 et seq. At issue in this case is the application of the provisions related to set-offs under Section 27-7-5-5. The statute permits insurers to offset their liability to insureds:

> The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:
>
> > (1) the difference between:
> >
> > > (A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and

5

(B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or

(2) the difference between:

(A) the total amount of damages incurred by the insured; and

(B) the amount paid by or for any person or organization liable for the insured's bodily injury.

I.C. § 27-7-5-5(c).

Interpreting UM/UIM set-off provisions and Indiana statutes, prior cases have arrived at varying results concerning the ambiguity of specific provisions. As our supreme court has stated,

> [U]nderinsured motorist coverage is designed to provide individuals indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents, and has generally been integrated into a given state's uninsured motorist legislation by modifying the definition of an "uninsured motorist." See generally Alan I. Widiss, Uninsured & Underinsured Motorist Coverage (2nd ed., vol.3, § 32.1, 1995). Together, these coverages serve to promote the recovery of damages for innocent victims of auto accidents with uninsured or underinsured motorists. Given the remedial nature of these objectives, uninsured/underinsured motorist legislation is to be liberally construed. United Farm Bureau Mutual Ins. Co. v. Runnels, 178 Ind. App. 435, 382 N.E.2d 1015, 1017 (1978) (citation omitted).

United Nat. Ins. Co. v. DePrizio, 705 N.E.2d 455, 459-60 (Ind. 1999).

We thus are mindful of both the remedial purposes of Indiana's UM/UIM statutory scheme and the rules of construction associated with contracts generally and with insurance contracts in particular. As our supreme court has observed:

> Although some "special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insured's, if a contract is clear and unambiguous, the language therein must be given its plain meaning." Allstate Ins. Co. v. Boles, 481 N.E.2d 1096, 1101 (Ind. 1985). On the other hand, "'[w]here there is ambiguity, insurance

6

policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." Bosecker v. Westfield Ins. Co., 724 N.E.2d 241, 244 (Ind. 2000) (quoting Am. States Ins. Co. v. Kiger, 662 N.E.2d 945, 947 (Ind. 1996)). A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. Ind.-Ky. Elec. Corp. v. Green, 476 N.E.2d 141, 145 (Ind.Ct.App. 1985). In insurance policies, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." Auto. Underwriters, Inc. v. Hitch, 169 Ind. App. 453, 457, 349 N.E.2d 271, 275 (1976).

Beam v. Wausau Ins. Co., 765 N.E.2d 524, 528 (Ind. 2002).

Where policy language is unambiguous, we give that language its plain and ordinary meaning. Masten, 953 N.E.2d at 569-70. In determining whether a provision is ambiguous, "[w]e construe the policy … from the perspective of 'an ordinary policy holder of average intelligence,'" and we are bound to accept an interpretation of the contract that harmonizes the various provisions. Id. at 569 (quoting Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind. 2009)). However, "insurance companies can only limit their liability 'in a manner consistent with public policy as reflected by case or statutory law.'" Id. at 570 (quoting Gheae v. Founders Ins. Co., 854 N.E.2d 419, 423 (Ind. Ct. App. 2006)).

Adjudication of claims of ambiguity of set-off provisions have generated numerous, seemingly divergent results. Beam, 765 N.E.2d at 529 (observing that one line of cases held language similar to that in Beam ambiguous and thus interpreted set-off clauses in favor of insureds, where another line of cases held such language unambiguous); Kinslow v. GEICO, 858 N.E.2d 109, 111 (Ind. Ct. App. 2006) (observing that "[s]etoff provisions in UM … policies have generated frequent litigation" centering on whether payment to an insured from a third party may be deducted from the total damages owed by the insurer), trans. denied.

7

Thus, where a UIM endorsement unambiguously provided for set-off of an insurer's liability based upon payments from other parties potentially liable for the insured's damages, Indiana courts have held that such provisions do not violate Indiana Code section 27-7-5-5 and do not defeat the public policy purposes of the UM/UIM statutes. See, e.g., Wagner v. Yates, 912 N.E.2d 805, 809-10 (Ind. 2009) (agreeing with prior opinions of this Court that insurers may be entitled to set-off where policy language is unambiguous). Yet while prior cases may be helpful in reaching a decision, "we construe insurance policies as a whole in each case," and thus prior cases "are not necessarily determinative of later cases." Masten, 953 N.E.2d at 569.

Appellants assert that this Court's opinion in Masten, which interpreted a policy worded and structured similarly to the State Farm policy here, governs the resolution of this case and that the trial court erred when it distinguished State Farm's policy language from the policy language in Masten. The policy language in that case provided:

> B. The limit of liability shall be reduced by all sums paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A [(liability coverage)] of this policy.
>
> C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A [(liability coverage)], Part B [(medical payments coverage)] or Part C [(uninsured motorist coverage)] of this policy.
>
> D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

Id. at 571.

The Masten Court agreed with the plaintiffs' argument in that case that "the limit of

8

liability provisions are ambiguous because they could—and per construction of ambiguous provisions in favor of insureds should—be read to apply only to underinsured motorists as the provisions are located in that endorsement." Id. The Court observed that "each section of the policy includes separate limit of liability provisions." Id. In light of the structure and language of the policy, and because one of the third parties involved in the collision with Masten was not underinsured within the meaning of Masten's insurance policy and the statutory definition of an underinsured motor vehicle, amounts paid from that third party's insurer did not fall within the scope of set-offs available to Masten's insurer. Id. at 572 (citing, inter alia, I.C. § 27-7-5-4(b)).

The language of the policy State Farm issued to Appellants largely tracks the statutory language and provides, in relevant part:

> The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury, is the lesser of:
>
> (1)     the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury…

(App. at 41) (emphasis omitted).

The trial court rested its grant of summary judgment in part on the basis that the policy's provisions permitted State Farm to set off its liability to the Appellants "by the sum of all payments … made by or on behalf of any person." (App. at 41) (emphasis added). The use of the word "any," the trial court reasoned, distinguished the provision from other set-off provisions that Indiana courts—and, in particular, the Masten Court—have previously held

9

were sufficiently ambiguous to defeat an insurer's right to set-off.

The trial court's result is consonant with other Indiana cases that consider similar policy language. In particular, this Court held that an insurance policy was unambiguous when it provided that amounts payable by an insurer were subject to set-off for sums paid by or for "any person or organization which may be legally liable, or under any collectible auto liability insurance." Delaplane v. Francis, 636 N.E.2d 169, 171 (Ind. Ct. App. 1994), trans. denied; accord State Farm Mut. Auto. Ins. Co. v. McNeal, 491 F. Supp. 2d 814, 828-29 (S.D. Ind. 2007) (holding as unambiguous similar policy language including the terms "any amount paid or payable").

Like the trial court, we conclude that the language in State Farm's policy was unambiguous. While State Farm's policy is structurally similar to the policy in Masten, including separate sections for medical payments and the UM/UIM endorsement, the applicable language of the UM endorsement explicitly affords State Farm a set-off for "all payments … made by or on behalf of any person or organization who is or may be liable." (App. at 41) (emphasis added). This is unlike the more open-ended language of the policy in Masten, which provided only for set off from "all sums paid … by or on behalf of persons," and separately indicated that the insurer would not "make a duplicate payment." Masten, 953 N.E.2d at 571.

We are mindful of the remedial purposes that underlie the UM/UIM statutory scheme in Indiana. But where the language of a statute permits an insurer to take a set-off from amounts paid "by or for any person or organization," I.C. § 27-7-5-5(c)(1), and the insurer

10

unambiguously does so in language that so closely tracks the language of the statute, we cannot elevate public policy interests above the clear language of the legislature's enactment. This is such a case. We therefore find no error in the trial court's entry of summary judgment in favor of State Farm's interpretation of its policy, and similarly find no abuse of discretion in the trial court's subsequent denial of the Appellants' motion to correct error.

Affirmed.

VAIDIK, J., and BROWN, J., concur.