

I N  T H E

# Indiana Supreme Court



FILED

Oct 08 2020, 12:02 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Supreme Court Case No. 20S-CT-23

### Steven Glover, As Personal Representative of the Estate of Shelina M. Glover,
*Appellant,*

—v—

### Allstate Property and Casualty Insurance Company,
*Appellee.*

Argued: March 12, 2020 | Decided: October 8, 2020

Appeal from the Marion Superior Court
No. 49D14-1711-CT-41566
The Honorable James B. Osborn, Judge

On Petition to Transfer from the Indiana Court of Appeals
Case No. 19A-CT-403

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices David, Massa, and Goff concur.

**Slaughter, Justice.**

Shelina Glover died in a car crash that was not her fault. Her estate settled its claims against the two responsible drivers, whose insurers paid policy limits totaling $75,000. The Estate also received separate settlements of $25,000 each for underinsured-motorist (UIM) coverage from Shelina's own carrier and from that of her estranged husband, who was driving the vehicle in which she died.

At issue here is the Estate's request for further UIM coverage of $25,000 under Shelina's parents' Allstate policy, which provides up to $100,000 per person for bodily injury, including death. Allstate opposes the Estate's claim on two grounds. First, it says Shelina was not a "resident relative" under the policy, meaning she was not an eligible insured, because her parents did not notify Allstate that she had been living with them. Second, Allstate argues that even if Shelina were an insured person under her parents' policy, the policy's offset and anti-stacking provisions bar the Estate from recovery because the $125,000 the Estate received from other insurers exceeds the limits under the policy.

We reject both of Allstate's arguments. First, we hold that Shelina was an "insured person" under the policy. She qualified as a "resident relative" because she lived with her parents, and her parents did not need to notify Allstate of her status because she was not an "operator" living within their household. Second, we hold that the policy's anti-stacking provision does not limit an insured's ability to recover under multiple UIM policies and that the policy's offset provision reduces only the payments made on behalf of those persons directly liable for the injury—$75,000 on this record. Having granted transfer, we vacate the trial court's judgment and remand with instructions to grant the Estate's cross-motion for summary judgment.

I

Shelina Glover died in a three-car accident. Kenneth Bogue was driving on County Road 300 in Decatur, Indiana, followed by Terry Robinson and his passenger, Shelina Glover. Matthew Hahn was approaching these drivers on the same road from the opposite direction.

As Bogue and Hahn were passing each other, Hahn clipped the trailer that Bogue was pulling. The impact forced Hahn into Robinson's path, causing a head-on collision from which Shelina died. Four insurance carriers were involved:

- Omni Insurance, which insured Bogue;
- Allstate Property and Casualty Insurance Company, which insured Hahn;
- American Family Insurance Company, which insured Robinson; and
- GEICO, which insured Shelina.

Omni (Bogue's insurer) and Allstate (Hahn's insurer) divvied up responsibility for the accident, assigning 52 percent of liability to Bogue and 48 percent to Hahn. Omni then filed an interpleader action, offering its policy limits because others also sustained injuries in the accident.

As Omni's suit was proceeding, Steven Glover, as personal representative of the Estate, sued Allstate alleging it had issued a policy to Shelina's parents, Wayne and Dovie Glover, and owed excess UIM coverage to Shelina. According to the suit, Shelina was a "resident relative" under her parents' policy because she had moved in with them six weeks before the accident and intended to live there for the foreseeable future. Thus, the suit alleged Shelina was an "insured person" under her parents' policy.

After the Estate sued, Omni's interpleader action went to mediation, during which time Omni (for Bogue) and Allstate (for Hahn) agreed to pay the Estate their respective per-person-liability limits—totaling $75,000. Later, the Estate received two separate $25,000 UIM payments—one each from American Family (for Robinson) and GEICO (for Shelina). These payments brought the Estate's total recovery to $125,000—consisting of $75,000 in liability settlements and $50,000 in UIM settlements. See *Glover v. Allstate Prop. & Cas. Ins. Co.*, 133 N.E.3d 184, 189 (Ind. Ct. App. 2019), trans. granted, 141 N.E.3d 22 (Ind. 2020).

Allstate, as insurer for Shelina's parents, then sought summary judgment against the Estate, arguing two issues. First, the policy required

the parents to notify Allstate when an operator became a "resident relative", and the parents never told Allstate that Shelina had moved in with them. 133 N.E.3d at 188. Second, Allstate owed nothing to the Estate under the "anti-stacking" and "offset" provisions of her parents' policy because the Estate had received settlements from other insureds in amounts exceeding the parents' UIM policy limit. *Id*. The Estate cross-moved for summary judgment, arguing that the notification requirement did not apply, that Allstate's policy allowed for offsets only of liability settlements, and that the anti-stacking provision barred aggregating UIM limits but not UIM recoveries. The gist of the Estate's argument was that it was entitled to $25,000 in UIM coverage under the parents' policy. The trial court granted summary judgment for Allstate based on the offset provision but denied Allstate's motion on the issue of notification.

The court of appeals affirmed, concluding that the parents' Allstate policy mandated that UIM limits "shall be reduced by [] all amounts paid" to the Estate. *Glover*, 133 N.E.3d at 191 (cleaned up). Because the Estate had already recovered funds from other insurers, the court held that "the Policy's UIM limit was reduced to zero." *Id*. Thus, the court determined, the "Estate is not entitled to further recovery under the Policy." *Id*. The court did not reach the issue of Shelina's status as a "resident relative". 133 N.E.3d at 185 n.1. We granted the Estate's petition to transfer, 141 N.E.3d at 22, thus vacating the court of appeals' opinion.

## II

First, we consider whether Shelina was a "resident relative" and thus an "insured person" for UIM purposes under her parents' Allstate policy. Under the policy, an insured person includes "any resident relative." The parties agree that Shelina is her parents' "relative", so her status turns on whether she is also a "resident", which the policy defines as "a person who physically resides in [the policyholders'] household with the intention to continue residence there."

When Shelina moved in with her parents—the policyholders—she packed up everything she and her children owned; she changed her address with the United States Postal Service to that of her parents' home; and her parents described their home as Shelina's "new home." These

facts show that Shelina intended to remain at her parents' home and thus was a "resident" under their policy.

Despite Shelina's intention to continue living with her parents, Allstate nevertheless argues that she was not an "insured person" due to its lack of notice. According to Allstate, "the Glovers' policy specifically requires notification to Allstate when there is a new resident relative to be added to the policy", yet her parents never notified Allstate of Shelina's move. The Estate counters that the policy's plain language says the notice requirement applies "whenever an operator becomes a resident of your household." In other words, it argues, Shelina's residency in her parents' household is not dispositive of the notice issue. For the notice requirement to apply, Shelina must have been an "operator" who resides within their household.

Unfortunately, Allstate's policy does not define "operator". And in briefing before the court of appeals and our Court, Allstate did not propose a definition. Given the policy's silence and the term's plain meaning, we interpret "operator" to be a person who is or will be operating one of the vehicles covered under the policy. Applying this interpretation, we hold that Shelina was not an operator. When she moved into her parents' home, she had her own car. Her parents "did not anticipate that Shelina would operate" either of the vehicles "listed on the Policy . . . because she had her own car." And her mother said that "[f]rom the time she moved into our home . . . through the day of her death . . . Shelina never operated our 2014 Ford Edge or our 2006 Ford F150 listed on the Policy." Because Shelina was not an "operator", the Glovers did not have to notify Allstate that she had moved in with them. Thus, Shelina was a "resident relative" as to whom the notice requirement did not apply, making her an "insured person" under the Glovers' Allstate policy.

III

Next, we consider the policy's anti-stacking clause and then turn to its offset clause. Applying our precedent, we hold first that Allstate's anti-stacking clause prevents only the aggregation of UIM policy limits; it does not bar aggregating more than one UIM recovery. Then, we hold that Allstate's $100,000 per-person UIM limits are offset by the $75,000 the

Estate received from Hahn's and Bogue's liability insurers. These payments were made on behalf of the two drivers "legally responsible" for Shelina's death. But Allstate's UIM limits are not offset by the UIM payments the Estate received from Robinson's and Shelina's own policies. Unlike the liability payments, the UIM payments were not made on behalf of persons "legally responsible" for Shelina's death. Thus, the Estate can recover $25,000 in excess UIM benefits under the Allstate policy as its total UIM recovery will still be less than the policy's $100,000 UIM limits.

A

To "stack" multiple insurance policies is to allow the insured "to recover under all policies applicable to the loss (i.e., stack the policies) up to the total damages." *Wagner v. Yates*, 912 N.E.2d 805, 812 (Ind. 2009). Under Indiana law, insurers can write UIM policies that ban such stacking. "The policy or endorsement affording [UIM] coverage … may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limits under any one (1) policy applicable to the loss". Ind. Code § 27-7-5-5(a). Anti-stacking clauses thus "limit coverage . . . so as to preclude stacking or double recovery of uninsured motorist coverages." *Wagner*, 912 N.E.2d at 812 (quoting *Progressive Ins. Co. v. Bullock*, 841 N.E.2d 238, 240 (Ind. Ct. App. 2006)). Under the governing statute, these clauses can limit not only uninsured-motorist (UM) coverage but also underinsured-motorist coverage (UIM). See I.C. § 27-7-5-5.

The Glovers' Allstate policy contains an anti-stacking clause, which says:

> The liability limits shown on the Policy Declarations for Uninsured Motorists Insurance may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available.

The Estate argues that this clause, which appears in the policy's "Limits of Liability" section, means it can recover no more than $100,000 in aggregate UIM benefits— "the highest applicable [UIM] limit of liability".

To date, the Estate has received only $50,000 in UIM payments, thus leaving, it argues, another $50,000 in potential UIM recovery under the policy.

Allstate agrees that this provision is relevant to the anti-stacking question. But it insists the decisive language—which Allstate says "closely mirrors the language" of Section 27-7-5-5(a)—occurs elsewhere in the policy, in the section labeled "If There Is Other Insurance".

> If more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit of uninsured motorists coverage.

This provision, according to Allstate, compares an insured's "total" recovery—here, the Estate's liability and UIM settlements—with the highest UIM limit of any of the policies. Under Allstate's approach, the Estate would be barred from further recovery because the highest UIM limit was $100,000 and the Estate has already recovered $125,000.

We reject Allstate's argument for two reasons. First, the record does not support invoking the provision on which Allstate relies. By its terms, this "total-benefits-payable" provision applies only if its condition precedent is satisfied—namely, that "more than one policy applies to the accident on a primary basis". Allstate, however, did not designate evidence showing that more than one policy applied here on a primary basis. Specifically, it did not try to establish that more than one policy insured the vehicle in which Shelina was riding when she died. Without such evidence, this provision cannot support Allstate's argument that the policy itself stands as an obstacle to the Estate's claim.

Second, our case law does not support Allstate's argument. In *American Economy Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162 (Ind. 1992), we affirmed the court of appeals' decision to enforce anti-stacking provisions in two insurance policies after the insured received a liability settlement. *Id*. at 164–65. One policy had UIM limits of $60,000; the other had limits of $100,000. Despite the anti-stacking provisions, the trial court

held that the injured woman had $135,000 of UIM coverage available to her—$160,000 of aggregate UIM coverage less a $25,000 liability payment. The court of appeals disagreed, concluding the trial court had impermissibly stacked the limits of the two policies. *American Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 593 N.E.2d 1242, 1245 (Ind. Ct. App. 1992), aff'd in part, vacated in part. After unstacking the policies, the court held that the "maximum amount of [UIM] coverage available" was "$100,000, not $135,000", *id.*, and we agreed.

> [T]he trial court should observe that appellees would first have recourse against American as the primary insurer for its [UIM] coverage limits of $60,000, less the $25,000 already paid by Vernon in [sic] behalf of the tortfeasor. Next, appellees would have access to Motorists' excess coverage of $100,000, less the $25,000 previously paid by Vernon. **In no event, however, may appellees' [UIM] coverage recoveries exceed the aggregate [UIM] coverage maximum of $100,000, consistent with the Court of Appeals['] interpretation of the "non-stacking" provisions of both policies**.

*American Econ.*, 605 N.E.2d at 165 (footnote omitted) (emphasis added). We noted that valid anti-stacking provisions do not bar multiple "[UIM] coverage recoveries", *id.*; they bar only multiple UIM recoveries from exceeding the "aggregate [UIM] coverage maximum". See *id.*

Consistent with *American Economy*, we hold that Allstate's anti-stacking provision likewise bars aggregating policy limits for UIM coverage but does not bar multiple UIM recoveries. Here, the Estate's total UIM payments of $50,000 from the Robinson and Shelina policies are less than the Estate's aggregate UIM maximum of $100,000 under her parents' Allstate policy. Thus, the disputed anti-stacking provision does not prevent the Estate from obtaining further UIM recoveries of up to $50,000.

## B

Finally, we consider whether the offset provision requires that sums paid to the Estate reduce Allstate's UIM coverage. This provision says:

> The limits of this Uninsured Motorist Insurance shall be reduced by: [] all amounts paid or payable by or on behalf of any person or organization that may be legally responsible for the bodily injury for which the payment is made.

At issue is the meaning of "legally responsible for the bodily injury for which the payment is made."

We considered this very question in *American Economy* and held that payments from someone "legally responsible" for injury referred "only to sums from those directly liable for causing the injur[y]". 605 N.E.2d at 165 n.5. Likewise, in *Wagner* we held that sums paid by those "legally liable" are "payments by or on behalf of those directly liable for causing the injur[y]." 912 N.E.2d at 810. In both cases, the disputed offset provisions required reduced coverage only for sums received for liability payments and not for UIM payments. See *id*. (noting the term "legally liable" does not "require reduction from amounts payable for sums from State Farm's UIM coverage"); *American Econ.*, 605 N.E.2d at 165 n.5 (noting the same for term "legally responsible").

Applying these precedents, we hold that Allstate's offset provision reduces its UIM coverage only for the payments the Estate received on behalf of Kenneth Bogue and Matthew Hahn, the two men at fault ("legally responsible") for the fatal accident. Bogue and Hahn were insured by Omni Insurance and Allstate, respectively, and these carriers paid the Estate $75,000 total in liability payments. Because that money was paid "by or on behalf of" someone "legally responsible" for the accident, it must be offset against the Allstate policy's $100,000 UIM limit, thus reducing the limit to $25,000. The offset provision does not, however, further reduce that limit by the Estate's receipt of UIM payments from American Family and GEICO, neither of which insured someone "legally responsible" for Shelina's death. See *Glover*, 133 N.E.3d at 189. Because the Estate's UIM settlements are not offset against the policy's UIM limit, the Estate has an additional $25,000 UIM coverage available to it under the Allstate policy.

* * *

For these reasons, we hold that the Estate is entitled to summary judgment on the issues of whether Shelina was an "insured person" and the availability of $25,000 in further UIM coverage under the parents' Allstate policy. We vacate the trial court's judgment and remand with instructions to grant the Estate's cross-motion for summary judgment.

Rush, C.J., and David, Massa, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Nicholas C. Deets
Tyler J. Zipes
Hovde Dassow + Deets, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Christopher D. Cody
Georgianna Q. Tutwiler
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana